UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DUANE M. FREDENDALL,**

      **Plaintiff,**

**v.**                                                                  Case No. 10-10410
                                                                  HONORABLE DENISE PAGE HOOD

**FORD MOTOR COMPANY and**
**FORD-UAW RETIREMENT PLAN**

      **Defendants.**

_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD AND TO REVERSE PLAN ADMINISTRATOR'S
DECISION AND GRANTING DEFENDANTS' MOTION TO AFFIRM
ADMINISTRATIVE DECISION IN ERISA-GOVERNED ACTION**

**I.     INTRODUCTION**

This matter is before the Court on cross-motions for entry of judgment based on the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. On June 17, 2010, Plaintiff filed a Motion for Judgment on the Administrative Record and to Reverse Plan Administrator's Decision **[Docket No. 12]**. Defendants responded on July 1, 2010 **[Docket No. 16]**, to which Plaintiff filed a reply on July 15, 2010 **[Docket No. 17]**.

Defendants filed a Motion to Affirm Administrative Decision in ERISA-Governed Action **[Docket No. 13, filed on June 17, 2010]**. Plaintiff filed a response on July 1, 2010 **[Docket No. 14]**, to which Defendant replied **[Docket No. 18, filed on July 15, 2010]**.

**II.    STATEMENT OF FACTS**

Plaintiff was employed by Defendant Ford Motor Company ("Defendant Ford" or

"Ford") as an electrician in Skilled Trades, at Ford's Van Dyke Transmission Plant. Plaintiff began his employment with Ford in July of 1976. In early 2008, Ford offered early retirement Buy-Outs under its Enterprise-Wide Buyouts II Program. As a part of this Buy-Out, Plaintiff formally requested to be considered for the Enhanced Retirement Plan Incentive ("ERPI"). Administrative Record ("AR") at 22-23. Plaintiff was approved to make an application for retirement benefits on March 7, 2008, and submitted his retirement application forms to Ford's Human Resources Customer Center (commonly referred to as the "National Employee Services Center" or "NESC"), requesting a retirement date of April 1, 2008. AR at 2-8.

According to Plaintiff, his final day of work at Ford was March 27, 2008. On this date, he obtained a Clearance Statement to take his tool box out of the plant. AR at 30. Defendants do not dispute that Plaintiff's originally requested retirement date was April 1, 2008. In fact, the retirement application package referenced "a retirement effective date of April 1, 2008." AR at 40. According to Defendants, however, on March 27, 2008, Plaintiff had not yet received approval of his retirement application and was not coded as a retiree.

On March 28, 2008, Plaintiff called NESC twice for clarification on the Survivor Coverage Waiver Form ("SCW"), which had to be signed in order to waive an automatic 65% survivorship benefit, as the ERPI provides a 100% survivorship benefit. AR at 37. Plaintiff expressed that he did not understand why he had to sign the form, and was advised that "if he didn't return anything he wouldn't be officially retired" and "he will be termed from his location 4-1-08 regardless if he sends his forms in or not as he is being separated under a buyout program." *Id*. Plaintiff was also advised that failure to submit the required documents would result in a delay in receipt of his benefits. *See id*. On March 31, 2008, Plaintiff called NESC

again, and advised the representative that he was refusing to sign the SCW form as written. Instead, he would submit an amended form. The representative informed him that his "pension [would] not begin until this form is received." *Id*. Plaintiff submitted the SCW form, adding language regarding his wife's survivorship waiver. AR at 8.

On April 2, 2008, Plaintiff was contacted by a co-worker who informed him that his boss, Tom Ternan, had been coding him as absent. AR at 30. After speaking with Mr. Ternan, Plaintiff called Labor Relations Supervisor Cynthia Farley. According to Defendants, Plaintiff was informed that she could not find his retirement papers, so he went into the office to bring her his personal copies. When he arrived, Ms. Farley had a copy of his retirement papers reflecting a retirement date of May 1, 2008. According to Defendants, Ms. Farley asked Plaintiff if he would agree to work until June 1, 2008, and Plaintiff responded that he would take it one month at a time. *Id*. According to Plaintiff, Ms. Farley asked Plaintiff to resume his employment for two additional months, and he agreed. *Id.*

On April 3, 2008, Defendants approached Plaintiff to sign a letter that would change his effective retirement date from April 1 to May 1, 2008. Plaintiff did not submit this letter, and the Case Detail log entry for April 29, 2008 instructed Ms. Farley not to enter the retirement code for Plaintiff, as his forms were "not in good order." AR at 35.

On April 9, 2008, Plaintiff received a letter from NESC's Retirement Department, informing him that his Lump Sum Distribution was being processed, and could be "expected to be completed in approximately 60 days after [his] retirement date." AR at 54. On May 1, 2009, Plaintiff sent an email to the Retirement Department, asking if his retirement had been cancelled. AR at 51. In response, supervisor Sue Ventura informed Plaintiff:

> Your retirement has not been cancelled, we are just waiting on a signed letter from you indicating you changed your retirement date from 4/1/08 to 5/1/08. Ford records indicate that you were paid for the month of April; therefore, you cannot retire April 1. Your signed application was for a 4/1/08 retirement date and since you worked in April, and can't retire April 1, a signed letter indicating you changed your date is required . . . .

AR at 50. Plaintiff informed Ms. Ventura that he did not change his retirement date, but Ford did. *Id.* Ms. Ventura replied that "[r]egardless of who changed the date, the date did change," and because Plaintiff worked in April and May, Plaintiff needed to submit a signed letter changing his retirement date to June 1, 2008. *Id.*

On May 21, 2008, David Yarmouth, Manager of Defendant Ford-UAW Retirement Plan, sent an e-mail to Plaintiff. AR at 48. Mr. Yarmouth recognized that there had been "some miscommunication" relative to Plaintiff's retirement date but, "[u]ltimately, [he] worked during April and May and in order for the Ford-UAW Retirement Plan to stay compliant with federal regulations, [he could] not receive a monthly benefit from the Plan until [he] officially terminated from service and [was] no longer working hours." *Id.* Mr. Yarmouth presented Plaintiff with two options: 1) if Plaintiff changed his retirement date to June 1, 2008, he could begin receiving a pension using his prior retirement kit, or 2) Plaintiff could choose a benefit date of June 1, 2008 or later, using a new retirement kit. Under either scenario, Plaintiff would be released from employment as of June 1, 2008. *Id.* Mr. Yarmouth informed Plaintiff that no action would be taken until they heard from Plaintiff and the ERPI payment would not be made until his retirement benefits began. *Id.* Although Plaintiff worked his last day at Ford on May 29, 2008, he did not sign a statement authorizing the change in effective retirement date from April 1, 2008 to June 1, 2008.

On June 13, 2008, Sue Ventura sent Plaintiff a letter informing him that his claim for

benefits to begin April 1, 2008, had been denied by the Plan Administrator. AR 24-5. Ms. Ventura cited the following reasons for the denial: 1) Plaintiff's application was not approved by his plant location; 2) Plaintiff was still employed–i.e., on the active employment rolls of Ford Motor Company–on April 1, 2008 and ineligible to receive benefits; and 3) Plaintiff continued to work and receive additional service credits through April and May, and was therefore ineligible to begin a pension benefit on April 1, 2008. *Id.*

On or around June 26, 2008, Plaintiff appealed the denial of his claim, arguing that he signed a contract he believed to be binding on himself and Ford, stating that he would retire on April 1, 2008. Further, he did retire on April 1, 2008, but was re-employed by Ms. Farley on April 2, 2008. AR at 30. On July 22, 2008, Plaintiff's appeal was denied.

After continued discussions regarding Plaintiff's claim for benefits, on October 17, 2008, Ford sent Plaintiff a new retirement package with a November 1, 2008 effective retirement date. On February 11, 2009, Plaintiff's attorney submitted Plaintiff's new retirement application, but noted that the retirement date should be April 1, 2008 rather than November 1, 2008. AR at 69-70.

When informed that Plaintiff had exhausted his appeal rights relative to his claim for benefits beginning April 1, 2008, Plaintiff filed the instant lawsuit. Plaintiff argues alternatively that Defendants violated his ERISA rights by failing to disburse pension payments between April 1, 2008 and November 1, 2008, and Defendants violated his ERISA rights by failing to pay these benefits between June 1, 2008 and November 1, 2008.

### III.  LAW & ANALYSIS

####   A.  Denial of Benefits

A denial of benefits under an ERISA plan "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103, 115 (1989). If a plan gives the administrator such discretion, the administrator's decision is reviewed under the "highly deferential arbitrary and capricious standard." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991).

According to the Plan at issue, "[t]he Board shall have jurisdiction to pass upon all questions concerning the application or interpretation of the provisions of the Plan which it is empowered to administer . . . subject only to the arbitrary and capricious standard of judicial review." AR at 222. Defendants retain discretionary authority to determine eligibility for benefits or to construe the terms of the Plan. Therefore, the Court must review Defendants' determination of Plaintiff's eligibility for benefits under an arbitrary and capricious standard of review. *See Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996) ("[A]pplication of the highly deferential arbitrary and capricious standard of review is appropriate only when the plan grants the administrator authority to determine eligibility for benefits or to construe the terms of the plan.")

"An arbitrary and capricious standard is highly deferential and requires that the administrator's decision be upheld as long as it is rational in light of the plan's provisions as well as reasonable with no abuse of discretion. It is only if the court is confident that the decision maker overlooked something important or seriously erred in appreciating the significance of evidence that it may conclude that a decision was arbitrary and capricious." *Eriksen v. Metro. Life Ins. Co.*, 39 F.Supp.2d 864, 870 (6th Cir. 1999)(internal citations omitted). "[T]he standard

6

requires that the decision 'be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.2d 514, 520 (6th Cir. 1998) *quoting Baker v. United Mine Workers of America Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). "A decision should be upheld if it is the result of a deliberate principled reasoning process and supported by substantial evidence." *Rochow v. Life Ins. Co. of North Am.*, 482 F.3d 860, 865 (6th Cir. 2007). While certainly a deferential standard of review, the Sixth Circuit has acknowledged that the "highly deferential standard of review applicable in this case does not automatically mandate adherence" to the administrator's decision. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). Further, "deferential review is not no review, and deference need not be abject." *Id.* at 73 (internal quotations omitted).

The Supreme Court has held that, when reviewing benefit denials under ERISA, courts are asked to "determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together." *Metlife Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2321 (2008). There are no mandated factors that a court must consider, and "any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Id.*

### 1. Conflict of Interest

Plaintiff argues that the administrative decision should be reversed because a conflict of interest exists. In this case, Ford Motor Company is the Plan Administrator, and the Plan is funded by contributions made by Ford Motor Company. Indeed, there is an "actual, readily apparent conflict here," where Defendant "both funds and administers the plan at issue here.

7

Accordingly, it incurs a direct expense as a result of the allowance of benefits, and it benefits directly from the denial or discontinuation of benefits." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 521 (6th Cir. 1988). Where such a conflict of interest exists, "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case." *Glenn*, 128 S.Ct. at 2346.

It is not enough, however, to state that a conflict of interest exists. "Sixth Circuit caselaw requires a plaintiff not only to show [] purported existence of a conflict of interest but also provide significant evidence that the conflict actually affected or motivated the decision at issue." *Cooper v. Life Ins. Co. of North Am.*, 486 F.3d 157, 165 (6th Cir. 2007). Defendants argue that Plaintiff has proffered no evidence indicating that the circumstances "suggest a higher likelihood that [the conflict of interest at issue] affected the benefits decision." *Glenn,* 128 S.Ct. at 2351. Plaintiff has not presented this Court with evidence on how the apparent conflict of interest affected the denial of benefits in this case.

**2. "Quantity and Quality" of the Evidence**

A review of the denial of benefits under the arbitrary and capricious standard obligates the Court to "includ[e] some review of the quality and quantity of the evidence on both sides of the issues. Otherwise, courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence–no matter how trustworthy or untrustworthy–to support a denial of a claim for ERISA benefits." *McDonald*, 347 F.3d at 172.

Defendants do not deny that, at one point, Plaintiff's effective retirement date was April

1, 2008. Instead, it is Defendants' position that the effective retirement date changed once Plaintiff agreed to continue work at Ford through May of 2008. It is undisputed that Plaintiff was advised by an NESC representative that he would be terminated from his location on April 1, 2008. In the same conversation, however, Plaintiff was advised that if he did not submit the forms, he "wouldn't officially be retired" and "would just be delaying receiving his [retirement] benefits." AR at 37.

According to the Summary Plan Description ("SPD"), "[p]ayments will begin only after application is made and approved. Until you apply for benefits and provide information requested by the Company or Retirement Board, no payments will be made." AR at 171. The SPD also states "[i]f you return to work for the Company after you retire, you will continue to receive your Life Income Benefit and Special Age 65 Benefit. You will not, however, earn additional service credits during your reemployment." AR at 150.

The Plan further provides that "forms must be signed and dated prior to the retirement effective date and returned to the Fidelity Service Center for Ford Motor Company on a timely basis." AR at 169. Additionally, "benefits are effective the first day of the first month after you file your application, or later if you sign your application after the effective date or voluntarily choose a later date for your benefit to commence." *Id.*

Defendants articulate reasonable and rational reasons as to why Plaintiff's benefits were denied. Despite Plaintiff's understanding of his employment status, the administrative record supports Defendants' explanation for denying benefits, in that Plaintiff was actively employed and earning Ford service credits in April of 2008. AR at 14; AR at 24-25. Plaintiff continued work at Ford until May 29, 2008, and the record does not indicate that there was an actual break

9

in Plaintiff's service.  That Plaintiff earned additional service credits lends credence to Ford's position that Plaintiff had not retired and returned to work, but simply continued working.  As Plaintiff was still employed through May, he was not entitled to a retirement benefit at that time.  AR at 67.  Although Plaintiff argues the ERPI Request for Consideration constituted a contract binding the parties to an April 1, 2008 retirement date, this document was simply a request for consideration, not an approval of Plaintiff's retirement application.  AR at 22.

In addition, Plaintiff's application for retirement was not approved until February 2009.  AR at 69-70, 95.  According to the Plan language, payments only begin after a retirement application is approved.  It was not until February 10, 2009, that Defendants received a properly completed retirement application.  Despite Plan language stating that forms must be signed and dated prior to the effective retirement date,  Defendant made the payments retroactive to the most recent retirement package sent to Plaintiff, November 1, 2008.  AR at 98.

There is substantial evidence supporting Defendants' denial of Plaintiff's request for retirement benefits effective April 1, 2008.  Defendants have set forth a reasonable and rational explanation for the denial, based on the record evidence.  In light of the facts and the Plan requirements, the Court cannot conclude that Defendants denial of benefits was arbitrary and capricious.

### IV.   CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that Plaintiff's Motion for Judgment on the Administrative Record and to Reverse Plan Administrator's Decision **[Docket No. 12, filed on June 17, 2010]** is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Affirm Administrative Decision in ERISA-Governed Action **[Docket No. 13, filed on June 17, 2010]** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff is not entitled to attorney's fees.


s/Denise Page Hood
Denise Page Hood
UNITED STATES DISTRICT JUDGE


Dated: March 30, 2011


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 30, 2011, by electronic and/or ordinary mail.


s/LaShawn R. Saulsberry
Case Manager, (313) 234-5165